IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BUZZ PHOTOS, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | No. 3:20-cv-656-K-BN |
| | § | |
| THE PEOPLE'S REPUBLIC OF CHINA, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Buzz Photos; Freedom Watch, Inc.; and Larry Klayman bring this putative class action against five defendants: (1) The People's Republic of China ("PRC"), "the recognized government of the nation country commonly known as 'China'"; (2) The People's Liberation Army ("PLA"), "the official military arm of the PRC"; (3) The Wuhan Institute of Virology (the "Institute"), "a biological laboratory" that Plaintiffs "allege includes an illegal biological weapons laboratory"; (4) Shi Zhengli, "the Director of the [Institute]"; and (5) Major General Chen Wei "of China's PLA, at the PLA's Academy of Military Medical Sciences," who Plaintiffs allege "is the Chinese military's top epidemiologist and virologist" and "led the creation of the COVID-19 coronavirus as a bioweapon for China's military." Dkt. No. 1, ¶¶ 17-21.

Plaintiffs seek $20 trillion in damages. *See id.* at 24, 25.

And United States District Judge Ed Kinkeade has referred Plaintiffs' action to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b).

Plaintiffs now move for alternative service, *see* Dkt. No. 29, requesting "that this Court allow Plaintiffs to serve Defendants by alternative means; namely, by either serving each Defendant through the Chinese Embassy in Washington, D.C. or by electronic means," *id.* at 2.

"'The task of determining when the particularities and necessities of a given case require alternate service of process' is placed squarely within the sound discretion of the district court." *SEC v. Millennium Bank*, No. 7:09-cv-50-O, 2009 WL 10689097, at *1 (N.D. Tex. Oct. 21, 2009) (quoting *Williams v. Advert. Sex LLC*, 231 F.R.D. 483, 486 (N.D. W. Va. 2005) (quoting, in turn, *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002))).

As to Plaintiffs' request for alternative service, they explain in part that,

> [s]ince April 21, 2020, Plaintiffs have attempted to effectuate service properly through the Foreign Sovereign Immunities Act ("FSIA"). *See* 18 U.S.C. § 1608(a), (b). Indeed, just days ago on August 3, 2020, a paralegal employed by Freedom Watch filed a sworn declaration detailing Plaintiffs' attempts at serving Defendants. *See* Exhibit 1. For example, she states:
>> I have been in contact with this Clerk's Office since April 21, 2020 and a member of its staff helped facilitate service of process pursuant to 28 U.S.C. § 1608(a)(3) and 28 U.S.C. § 1608(b)(3)(B) by dispatching a copy of the summons, complaint and notice of suit, together with a translation of each into Chinese, to each of the five (5) named Defendants via Federal Express and DHL on two (2) separate occasions.
> *Id.* The declaration also details the paralegal's contact with the Federal Express representatives and the DHL representatives and how each confirmed that Defendants refused the packages containing the Complaint, summons and notice of suit. In fact, Defendant Institute and Defendant Zhengli actually caused someone to handwrite "WE DID NOT SIGN FOR THIS" on the Federal Express packages that were reverted back to Plaintiff. *See* Exhibit 2. It is clear that Defendants, who have so harmed the health and well-being of the American people, much

> less Plaintiffs, have no respect for the American legal system and this Court in particular.
>
> Because each Defendant is actively evading service, Plaintiffs require relief from this honorable Court or service may never be effected. Plaintiffs request that this Court allow Plaintiffs to serve Defendants by alternate means; namely, by either serving each Defendant through the Chinese Embassy in Washington, D.C. or by electronic means, as many courts are allowing given the proliferative nature of the Internet.

Dkt. No. 29 at 2 (citations omitted).

As Plaintiffs acknowledge, service of their complaint implicates the Foreign Sovereign Immunities Act, which

> "largely codifies the 'restrictive' theory of sovereign immunity, under which 'immunity is confined to suits involving the foreign sovereign's public acts, and does not extend to cases arising out of a foreign state's strictly commercial acts." *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151 (D.C. Cir. 1994) (quoting *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 487 (1983)). "Thus the Act repealed foreign immunity for 'commercial activities,' § 1605(a)(2), but preserved it for inherently sovereign or public acts." *Id.* at 151-52 (citations omitted). In line with that distinction, the Act contains two separate provisions for serving process on foreign entities: one for service "upon a foreign state or political subdivision of a foreign state," 28 U.S.C. § 1608(a), and another for service "upon an agency or instrumentality of a foreign state." 28 U.S.C. § 1608(b).

*Janvey v. Libyan Inv. Auth.*, No. 3:11-cv-1177-N, 2011 WL 13299660, at *5 (N.D. Tex. June 16, 2011).

So, as to each defendant, whether the FSIA applies – and, if so, which provision applies – dictates whether the Court may order alternative service as to that defendant. *See, e.g.*, *Box v. Dall. Mex. Consulate Gen.*, 487 F. App'x 880, 886 (5th Cir. 2012) (per curiam) ("'[P]laintiffs must strictly comply with the statutory service of process provisions' of § 1608(a), and actual notice is insufficient." (quoting *Magness v. Russ. Fed'n*, 247 F.3d 609, 616 (5th Cir. 2001))); *Kumar v. Rep. of Sudan*, 880 F.3d

144, 154 (4th Cir. 2018) ("[A] court cannot excuse noncompliance with the specific requirements of § 1608(a). In short, '[l]eniency' when applying § 1608(a) 'would disorder the statutory scheme' Congress enacted." (citations and footnote omitted)); *Doe v. Holy See*, Civ. A. No. 13-128, 2014 WL 1329985, at *4 (E.D. La. Apr. 2, 2014) ("Only strict adherence to the statutory requirements for accomplishing service renders service effective." (citing *Magness*, 247 F.3d at 615-16)).

While it seems clear that the PRC, as a foreign state, must be served under Section 1608(a), as to at least the remaining entity defendants,

> [u]nder 28 U.S.C. § 1603(a), the term "political subdivision" includes all governmental units beneath the central government. An "agency or instrumentality" of a foreign state, on the other hand, is defined as any organ or political subdivision of a foreign state which is a separate legal person or entity. 28 U.S.C. § 1603(b). Whether an entity is a "separate legal person" depends upon the nature of its "core functions" – governmental vs. commercial – and whether the entity is treated as a separate legal entity under the laws of the foreign state.

*Magness*, 247 F.3d at 613 n.7 (citing *Transaero*, 30 F.3d at 151; *Hyatt Corp. v. Stanton*, 945 F. Supp. 675, 683 (S.D.N.Y. 1996)).

The Court therefore required Plaintiffs to file a supplemental brief to their motion for alternative service to explain, in their view, which provision of the FSIA – Section 1608(a) or Section 1608(b) – applies to each defendant. *See* Dkt. No. 34. And Plaintiffs have filed that brief, conceding that the PRC, as a foreign state, and the PLA, as a political subdivision of a foreign state, must be served under the provisions of Section 1608(a) but contending (1) that the Institute "is an agency or instrumentality of the … PRC because its 'core function' is not governmental in nature and [thus may be] treated as a separate legal entity" and "served pursuant to

- 4 -

28 U.S.C. § 1608(b)" and (2) that "the FSIA does not apply against … officials of foreign governments, whether present or former." Dkt. No. 37.

For the following reasons, the Court DENIES Plaintiff's motion for alternative service as supplemented.

## I. The PRC and the PLA

Plaintiff's supplemental brief appears to clarify that they no longer seek alternative service as to the PRC and the PLA, at least service as to these defendants through the Chinese Embassy in Washington, D.C. or by electronic means. *See, e.g.*, *id.* at 11 ("For the foregoing reasons, Plaintiffs respectfully request that this Court grant their request to serve Defendants the Institute, Zhengli and MG Chen Wei alternatively …."). But Plaintiffs continue to reference their unsuccessful efforts to serve the PRC and the PLA only under Section 1608(a)(3), *see id.* at 6, and they "request that this Court allow the Clerk of the Court to dispatch the materials to [the United States Ambassador to the PRC] with a request, pursuant to 28 U.S.C. § 1608(a)(3), to send his official representative to Defendant PRC's Ministry of Foreign Affairs to have it sign for the Complaint, notice of suit and summonses," *id.* at 11.

First, "Section 1608(a)'s service of process provisions are explicitly hierarchical: a plaintiff must attempt service in the order required by the statute." *Doe*, 2014 WL 1329985, at *4 (citing *Magness*, 247 F.3d at 613). But, even assuming that Plaintiffs already sought to serve the PRC and the PLA first under Section 1608(a)(1) and then under Section 1608(a)(2), the alternative method of service under Section 1608(a)(3) that they now propose does not strictly comply with the language

of that provision, which requires that "a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, [ ] be addressed to and dispatched by the clerk of court <u>to the head of the ministry of foreign affairs of the foreign state concerned</u>," 28 U.S.C. § 1608(a)(3) (emphasis added), not to the U.S. Ambassador, directing that he or she serve the foreign minister, *cf. Doe*, 2014 WL 1329985, at *6 ("The plaintiff does not dispute his failure to serve the amended complaint, but counsel nevertheless pleads that '[p]laintiff honestly believes that the service on Defendant Holy See was completed in strict compliance with' the FSIA's service requirements. Counsel's honest (and less than skillful) belief is irrelevant. Strict compliance is the standard. It was not met." (footnote omitted)).

And, if Plaintiffs' efforts to strictly comply with Section 1608(a)(3) have been unsuccessful, their remedy is to resort to Section 1608(a)(4), under which service should be attempted through the U.S. State Department's Director of Special Consular Services in Washington, D.C., not the U.S. Ambassador in Beijing, as Plaintiffs propose. *Cf. Kumar*, 880 F.3d at 160 (Section 1608(a) "specifically contemplates that service via subsection (a)(3) may not be possible in every foreign state, as recognized by subsection (a)(4), which allows for service under the alternative of using diplomatic channels. If, after thirty days, a plaintiff is unable to effectuate service pursuant to subsection (a)(3), he or she can turn to subsection (a)(4). *That* is the subsection that Congress intended plaintiffs to use to take advantage of the reliability and security of the diplomatic pouch.").

For these reasons, to the extent that Plaintiffs request alternative service as the PRC and the PLA, the Court denies their motion.

## II. The Institute

Plaintiffs urge the Court to find that the Institute can be served under Section 1608(b), arguing that, "[u]nlike [the PRC and the PLA], Defendant the Institute is an agency or instrumentality of the foreign state of Defendant PRC because its 'core function' is not governmental in nature and it is treated as a separate legal entity." Dkt. No. 37 at 7.

As the United States Court of Appeals for the Fifth Circuit has explained, "[w]hether an entity is a 'separate legal person' depends upon" two things: "the nature of its 'core functions' – governmental vs. commercial – and whether the entity is treated as a separate legal entity under the laws of the foreign state." *Magness*, 247 F.3d at 613 n.7 (citations omitted). While Plaintiffs conclude that the Institute "is treated as a separate legal entity," Dkt. No. 37 at 7, they fail to support this conclusion or otherwise explain how the laws of the PRC treat the Institute.

Similarly, Plaintiffs insist that the core function of the Institute is not governmental in nature, but they also fail to support this conclusion or otherwise explain why the Institute's core function is not governmental but commercial. Helpfully, however, another federal district court recently discussed this distinction:

> Factors to examine include "the structure and function of an entity." *NML Capital., Ltd. v. Space Expl. Techs. Corp.*, 2015 WL 1334291, at *6 (C.D. Cal. Mar. 6, 2015). For example, "waging war, engaging in foreign diplomacy, and conducting the affairs of state are quintessential government functions." *Id.* at *5. And where an entity's "primary function is development and execution of a national space

> program," it is "more similar to a government entity's [core function] than a commercial enterprise's." *Id.* at *6. "[N]ational programs are usually, by definition, governmental." *Id.* "[S]pace exploration and research are traditionally associated with governments (even with the advance of private space corporations in recent years)." *Id.*; *cf. Taylor v. Kingdom of Sweden*, 2019 WL 3536599, at *3-4 (D.D.C. Aug. 2, 2019) (applying core functions test to find the Swedish National Museums of World Culture to be part of Swedish government for FSIA purposes, where functions included "establishing and fostering educational, informational, and cultural exchanges with foreign countries, universities, non-governmental organizations").
>
> "In contrast, the core functions of entities acting as private companies are predominantly commercial." *Space Expl. Techs.*, 2015 WL 1334291, at *5. An example is a national energy company whose "primary function is to sell natural gas at low prices." *NML Capital, Ltd. v. Republic of Argentina*, 892 F. Supp. 2d 530, 533 (S.D.N.Y. 2012). Or, "a public depository that operates much like a bank" is predominantly commercial. *Space Expl. Techs.*, 2015 WL 1334291, at *5 (citing *NXP Semiconductors USA, Inc. v. Brevets*, 2014 WL 4621017, at *8 (N.D. Cal. Sept. 15, 2014)).

*Hopkins v. Subaru Telescope Nat'l Astronomical Observatory of Japan*, Civ. No. 19-00064 JMS-KJM, 2019 WL 5865619, at *3 (D. Haw. Nov. 18, 2019).

Applying the core functions test to the Institute, Plaintiffs, in their complaint, identify the Institute as an "agency of the Government of China," Dkt. No. 1 at 1, and they allege that the Institute "includes an illegal biological weapons laboratory," *id.*, ¶ 19, and is "equipped to handle deadly coronaviruses, [through] the National Biosafety Laboratory, [a] part of the Wuhan Institute of Virology," *id.*, ¶ 59; *see also id.* at ¶ 61 ("[T]he Wuhan Institute of Virology is used for China's illegal biological warfare weapons programs, according to experts …."). Accordingly, particularly to the extent that Plaintiffs allege that the Institute weaponized the virus, their own characterization of the Institute reflects that its core function is governmental, not commercial. *See, e.g., Hopkins*, 2019 WL 5865619, at *3 ("'[W]aging war' is a

'quintessential government function[].'"). And, because Plaintiffs have presented the Court with no evidence that the Institute's core function is commercial, their own allegations are enough to conclude that the Institute must be served under Section 1608(a). *Cf. id.* ("Moreover, the court was presented with no evidence that any of NAOJ's core functions are commercial in nature.").

But, like the district court in *Hopkins* did as to NAOJ, *see id.*, if the Court were to take judicial notice of the English version of the Institute's website, it would further support that the Institute, identified as part of the Chinese Academy of Sciences, provides services traditionally associated with governments. *See* About WIV, http://english.whiov.cas.cn/About_Us2016/Brief_Introduction2016/ (last visited Nov. 13, 2020) (The Institute "possesses the key laboratory of Chinese Academy of Sciences for newly emerging and fulminating infectious disease pathogen and biosecurity, key Laboratory of agricultural and environmental microbiology, Chinese Academy of Sciences, Hubei provincial virus and disease engineering technology research center, Hubei provincial small and medium enterprises common technology biopesticide R & D promotion center, Wuhan new infectious disease key laboratories which are five provincial and ministerial level R & D bases.").

For these reasons, the Court denies Plaintiffs' motion for alternative service as to the Institute. Like the PRC and the PLA, this defendant must be served under Section 1608(a).

### III. The Individual Defendants

Plaintiffs, citing *Samantar v. Yousuf*, 560 U.S. 305 (2010), finally urge the

Court to find that the FSIA cannot apply as to service on the individual defendants. *See* Dkt. No. 37 at 9 ("In 2010, the [United States] Supreme Court decided unanimously in *Sama[n]tar v. Yousef* that the FSIA does not apply against foreign officials. This ruling makes certain that officials of foreign governments, whether present or former, are not entitled to invoke the FSIA as a shield. … Since Defendants Zhengli and MG Chen Wei are individuals and not considered to be the state itself, neither defendant is protected by FSIA.").

The Supreme Court in *Samantar* did hold that, "[r]eading the FSIA as a whole, there is nothing to suggest we should read 'foreign state' in [28 U.S.C.] § 1603(a) to include an official acting on behalf of the foreign state, and much to indicate that this meaning was not what Congress enacted." 560 U.S. at 319 (footnote omitted).

But, in *Samantar*, the Supreme Court also observed that,

> [e]ven when a plaintiff names only a foreign official, it may be the case that the foreign state itself, its political subdivision, or an agency or instrumentality is a required party, because that party has "an interest relating to the subject of the action" and "disposing of the action in the person's absence may ... as a practical matter impair or impede the person's ability to protect the interest." FED. R. CIV. P. 19(a)(1)(B). If this is the case, and the entity is immune from suit under the FSIA, the district court may have to dismiss the suit, regardless of whether the official is immune or not under the common law. *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008) ("[W]here sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign"). Or it may be the case that some actions against an official in his official capacity should be treated as actions against the foreign state itself, as the state is the real party in interest. *Cf. Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity" (citation omitted)).

*Id*. at 324-25.

And the Supreme Court concluded that "[that] case, in which respondents [ ] sued petitioner in his personal capacity and [sought] damages from his own pockets, [was] properly governed by the common law because it [was] not a claim against a foreign state as the [FSIA] defines that term." *Id.* at 325 ("Although Congress clearly intended to supersede the common-law regime for claims against foreign states, we find nothing in the statute's origin or aims to indicate that Congress similarly wanted to codify the law of foreign official immunity.").

So, as multiple federal courts have recognized since *Samantar*,

> to determine whether a suit against a foreign official is governed by the FSIA, [a court] must look to whether the suit is against the official personally or whether the state is "the real party in interest." If the suit is against the official personally, then the common law regarding sovereign immunity applies, but if the state is "the real party in interest," then the suit should be treated as an action against the foreign state itself to which the FSIA would apply.

*Odhiambo v. Rep. of Kenya*, 930 F.Supp.2d 17, 34 (D.D.C. 2013) (citation omitted); *see also, e.g.*, *Angellino v. Royal Family Al-Saud*, 688 F.3d 771, 775 n.6 (D.C. Cir. 2012) ("The district court assumed Angellino had sued the sixteen individual defendants in their individual capacities and therefore looked to [Federal Rule of Civil Procedure] 4(f) to resolve the service of process issue. Before us, however, Angellino asserts that he sued the members of the Royal Family 'in their official capacities.' Nevertheless, it is clear to us that the sixteen individual defendants were sued in their individual capacities as Angellino's breach of contract claim does not allege an act of state such that Angellino's action against the individual defendants 'should be treated as [an] action[ ] against the foreign state itself, as the state is the real party in interest.'" (citations omitted)); *Strange ex rel. Strange v. Islamic Republic of Iran*, 964 F.3d 1190,

1193-94 (D.C. Cir. 2020) ("Although 'it may be the case that some actions against an official in his official capacity should be treated as actions against the foreign state itself,' the Parents allege that Karzai 'was acting in his unofficial capacity,' and, as a result, they cannot 'rely on the [FSIA]'s service of process and jurisdictional provisions[.]' Accordingly, the district court held that Karzai must be served pursuant to Federal Rule of Civil Procedure 4(f), which governs service of process on individuals in foreign countries." (citations omitted)).

Plaintiffs have not explicitly pled in which capacity they have sued the individual defendants. *See generally* Dkt. No. 1. And plaintiffs generally need not do so in this circuit. *See Robinson v. Hunt Cnty., Tex.*, 921 F.3d 440, 446 (5th Cir. 2019) ("'A person's capacity need not be pled except to the extent required to show the jurisdiction of the court.'" (quoting *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir. 1973) (per curiam) (citing, in turn, FED. R. CIV. P. 9(a)))).[1] "This principle, however, does not give [Plaintiffs] free rein to change [their] capacity allegations at any time in the litigation. To determine whether a defendant is being sued in his or her official or individual capacity, [a court should] examine '[t]he allegations in the complaint'" "and '[t]he course of proceedings[.]'" *Id.* (quoting *Parker*, 479 F.2d at 336, then *Graham*, 473 U.S. at 167 n.14).

---

[1] *Cf. Hardesty v. Waterworks Dist. No. 4 of Ward Four*, 954 F. Supp. 2d 461, 470-71 (W.D. La. 2013) ("The Fifth Circuit follows the majority view among the circuits that, when a plaintiff fails to allege in what capacity he is suing the defendants, a court must look to the substance of the plaintiff's claim, the relief sought, and the course of proceedings to discern the nature of the § 1983 suit." (citing *Parker*, 479 F.2d at 336; collecting cases)).

This approach, from suits brought under 42 U.S.C. § 1983, is consistent with FSIA authority following *Samantar*. *Compare Robinson*, 921 F.3d at 446, *with, e.g., Angellino*, 688 F.3d at 775 n.6; *Strange*, 964 F.3d at 1193-94; *Mohammadi v. Islamic Rep. of Iran*, 947 F. Supp. 2d 48, 72 (D.D.C. 2013) ("It is apparent that the plaintiffs' theory of this case is that any actions taken by Khamenei and Ahmadinejad's were actions of the Iranian 'regime.' This theory also fits with the nature of the allegations in this case, which are essentially that Akbar and Manouchehr were imprisoned, tortured, and in Akbar's case killed through state actions performed at the direction of Khamenei and Ahmadinejad. As a result, the Court concludes that the Islamic Republic of Iran is the 'real party in interest' in this action, and therefore the claims pled against defendants Khamenei and Ahmadinejad will be treated as claims against Iran itself." (citations omitted)), *aff'd*, 782 F.3d 9, 17 (D.C. Cir. 2015) ("Plaintiffs also raise no challenge to the district court's determination that foreign sovereign immunity extended to the individual defendants, Khamenei and Ahmadinejad. Immunity under the FSIA therefore applies to all defendants."); *see also Nnaka v. Fed. Rep. of Nigeria*, 238 F. Supp. 3d 17, 31 (D.D.C. 2017) (The "conclusion" that Nigeria is "the 'real party in interest' … is reinforced by the structure of Nnaka's complaint."); *TEMPO Networks LLC v. Gov't of NIA*, Civ. No. 2:14–6334 (WJM), 2015 WL 4757911, at *3 (D.N.J. Aug. 12, 2015) ("Here, the state is the real party in interest as to the claims in Count Six against Minister Brantley in his official capacity. The Complaint itself supports this conclusion." (citation omitted)); *Sequeira v. Rep. of Nicaragua*, No. 16-25052-CIV, 2017 WL 8772507, at *5

(S.D. Fla. Aug. 1, 2017) (concluding that foreign individuals were sued in their individual capacities where the plaintiff sought "damages against the individuals in a personal capacity"; the "allegations and filings [did] not provide any evidence that [one individual] is a Nicaraguan government official"; and the individuals' alleged "motives [were] overtly private, and as alleged, [had] nothing to with the individuals acting on behalf of Nicaragua and [the governmental entity of] Chinandega"), *rec. adopted*, 2017 WL 8772508 (S.D. Fla. Sept. 22, 2017).

Plaintiffs' complaint confirms that they have sued the individual defendants in their official capacities. *See, e.g.*, Dkt. No. 1, ¶ 1 ("This is a complaint for damages and equitable relief arising out of the creation and release, accidental or otherwise, of a variation of coronavirus known as COVID-19 by the People's Republic of China and its agencies and officials as a biological weapon in violation of China's agreements under international treaties, and recklessly or otherwise allowing its release from the Wuhan Institute of Virology into the city of Wuhan, China, in Hubei Province, by among other acts failing to prevent the Institute's personnel from becoming infected with the bioweapon and carrying it into the surrounding community and proliferation into the United States." (footnote omitted and emphasis added)).

None of Plaintiffs' allegations are specific to actions taken by either defendant individually or in a personal capacity. For example, while they name Shi Zhengli as a defendant, *see id.*, ¶ 20, Plaintiffs fail to again mention this defendant.

As to Defendant Chen Wei, the allegations specific to this defendant relate to Chen Wei's experience with combatting SARS and Ebola and experience within the

- 14 -

Chinese military and allege that this expertise is inconsistent with how she reacted to COVID-19. *See id.*, ¶¶ 69-72 ("[C]uriously, in the attempt to put the COVID-19 disease 'back in the bottle' Major Gen. Chen injected herself and six members of her staff with a potential vaccine which had not yet been tested on animals. Thus, through the use of a possible vaccine on herself, Major Gen. Chen's actions are consistent with desperation and her and her nation's guilt that the Chinese military and all of the Defendants, acting in concert, jointly and severally as joint tortfeasors, caused this burgeoning national and world catastrophe."). Thus, Plaintiffs' allegations related to Chen Wei are consistent with the theory that she was acting in an official capacity.

Further, through the course of proceedings, Plaintiffs have shown that the claims against the individual defendants are official capacity claims by their attempt to serve these defendants under the FISA. *See, e.g.*, Dkt. No. 29 at 2.

In sum, the claims against the individual defendants should be treated as claims against the PRC itself. As such, like the PRC, the PLA, and the Institute, service as to the individual defendants is governed by Section 1608(a). And the Court denies Plaintiffs' motion for alternative service as to the individual defendants.

SO ORDERED.

DATED: November 24, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE